## AMERICAN TELEPHONE AND TELEGRAPH COMPANY, Petitioner,

v.

## MCI COMMUNICATIONS CORPORATION and MCI Telecommunications Corporation, Respondents.

Misc. No. 84–8053.

United States Court of Appeals, Seventh Circuit.

Filed Oct. 22, 1984.*

Denied Nov. 9, 1984.

---

* This order was issued to the parties in typewritten form on November 9, 1984.

Cudahy, Circuit Judge, filed separate opinion concurring in part and dissenting in part.

H. Blair White, Sidley & Austin, Chicago, Ill., for petitioner.

Chester T. Kamin, Jenner & Block, Chicago, Ill., for respondents.

Before WOOD and CUDAHY, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

### ORDER

On consideration of:

1.  AT & T'S PETITION FOR PERMISSION TO APPEAL UNDER SECTION 1292(b) OR, IN THE ALTERNATIVE, ITS MOTION TO CONSTRUE THE COURT'S PRIOR MANDATE, filed on October 22, 1984 by counsel for petitioner.

2.  MCI'S ANSWER IN OPPOSITION TO AT & T'S PETITION FOR PERMISSION TO FILE AN INTERLOCUTORY APPEAL, filed on October 29, 1984 by counsel for respondents.

3.  MOTION FOR LEAVE TO FILE REPLY TO MCI'S ANSWER IN OPPOSITION TO AT & T'S PETITION FOR PERMISSION TO FILE AN INTERLOCUTORY APPEAL, filed on November 1, 1984 by petitioner.

4.  AT & T'S REPLY TO MCI'S ANSWER IN OPPOSITION TO AT & T'S PETITION FOR PERMISSION TO FILE AN INTERLOCUTORY APPEAL, filed on November 1, 1984 by counsel for petitioner.

5.  MCI'S MOTION FOR LEAVE TO SUPPLEMENT THE RECORD, filed on November 5, 1984.

6.  AT & T'S RESPONSE TO MCI'S MOTION TO SUPPLEMENT THE RECORD.

7.  MCI'S MOTION TO FURTHER SUPPLEMENT THE RECORD, filed November 7, 1984.

In January 1983, this Court set aside a $1.8 billion judgment in favor of MCI. We remanded to the district court for a separate trial on the issue of the amount of damages MCI had suffered as a direct result of particular unlawful practices by AT & T. *MCI Communications Corp. v.*

*American Telephone & Telegraph Co.,* 708 F.2d 1081 (7th Cir.1983).

Upon remand, AT & T moved to exclude MCI's evidence that claims damages for services other than private line services. The motion was prompted by the fact that MCI's currently proposed Lost Profits Study attempts to recover damages based on lost revenue from MCI's public, fully switched long distance service known as Execunet. The Lost Profits Study used by MCI at the first trial focused on lost revenue from private line services. AT & T reasoned (1) that recovery of Execunet damages is foreclosed by this court's mandate on the earlier appeal, ordering retrial on the issues of damages only, and (2) that principles of equity bar MCI from attempting recovery of Execunet damages because of MCI's representations prior to and at the first trial that Execunet damages were not at issue in this case.

On October 12, 1984, Judge Grady entered an order denying the AT & T motion. In the order, Judge Grady described the MCI theory for claiming lost revenue on Execunet services as follows:

[H]ad [MCI] not lost [private line] revenues as a result of AT & T's anticompetitive conduct, it could have used these revenues to expand Execunet and Network Service earlier and more broadly than it did during the damage period. Plaintiffs argue that the full extent of this damage to Execunet and Network Service was not appreciated at the time of trial and has come to be understood in light of the success these services have enjoyed since the trial.

The practical significance of this approach could be enormous. The jury verdict in the first trial was $600 million, based on a finding of liability on ten charges of anticompetitive conduct. Only seven charges are left, and they do not include HiLo, arguably a major component of the $600 million verdict. Counsel inform me that under the new lost profits study plaintiffs' damages, before trebling, will be approximately $5 billion (as opposed to a claimed $900 million at the first trial). Of that amount, approximately half will be attributed to lost revenues on Execunet and Network Service.

Judge Grady was not satisfied that the mandate precludes recovery for injury to non-private line service proximately caused by AT & T's conduct. He did, however, suggest an interlocutory appeal and included in his order a statement in conformity with 28 U.S.C. § 1292(b). He stated the controlling question of law as whether the mandate of the Court of Appeals permits introduction of non-private line damage evidence such as loss of revenues from Execunet and Network Service.

AT & T petitioned for permission to appeal.

Under the statute, permitting an appeal at this stage is left to our discretion. In the exercise of that discretion, we deny permission. AT & T's alternative motion, that we construe the mandate, is also denied.

It is at least arguable that MCI is seeking to establish an injury much wider in scope than it sought to establish at the first trial.

The question whether MCI's present claim of injury to its business of providing Execunet and Network Service is embraced within the issue of liability, and therefore not properly triable under our mandate, or whether it is to be treated as part of the damage issue open to trial under our mandate although not proved at the first trial, is a close and difficult one, as to which we find no precedent. We have before us only the papers filed by the parties in support of and in opposition to the AT & T petition. We have concluded that this question can be more adequately considered on a full record, including the record which will be made at the upcoming trial. The same is true of the question whether MCI's earlier representations concerning the absence of Execunet issues from this case foreclose MCI on equitable principles from asserting its present claim.

The challenged evidence will almost certainly raise other questions which could not be resolved on appeal until the trial record is complete. As Judge Grady observed, there "may be a question as to whether

evidence of injury to Execunet and Network Service will be too remote and speculative to be admissible." We have every confidence that as trial judge, he will be cautious in ruling on issues of this type. We assume also that if the current Lost Profits Study or similar evidence be admitted, AT & T will be given an adequate opportunity to show the jury inconsistencies between it and the corresponding evidence propounded by MCI at the first trial, and that MCI will then have an opportunity to offer evidence in explanation of such inconsistencies. Whatever the effect MCI's explanation of any inconsistency may have upon the findings of the jury, it may well illuminate the question of law whether the broadened claim of damage involves a prohibited attempt to retry in part the issue of liability.

Judge Grady expressed concern over the possibility of a third trial being required in the event that on appeal after the upcoming, second trial, this court should determine that it was error to admit evidence in support of MCI's present claim. Avoidance of that possibility was a reason for his suggestion of an appeal under § 1292(b). It is appropriate to consider whether, in the words of the statute, a decision on appeal "may materially advance the ultimate termination of the litigation." In considering this factor, it occurs to us that the possibility of need for a third trial may be materially reduced by the use of a form of special verdict or of interrogatories so that any amount of damages dependent upon the loss of revenues from Execunet and Network Service will be separately stated.

We emphasize that our order today is not a decision on the merits. The parties remain free to raise and argue the admissibility of evidence of non-private line damages on appeal. Accordingly, IT IS ORDERED that AT & T'S PETITION FOR PERMISSION TO APPEAL UNDER SECTION 1292(b) OR, IN THE ALTERNATIVE, ITS MOTION TO CONSTRUE THE COURT'S PRIOR MANDATE, is denied without prejudice to further argument on the merits.

CUDAHY, Circuit Judge, concurring in part and dissenting in part.

I agree with a great many of the things the majority says in its attempt to guide the trial judge.[1] I cannot, however, agree with our rejection of the requested interlocutory appeal and from this I therefore respectfully dissent.

The decision of this court to return this case for a trial only on damages was made with full knowledge of the more obvious pitfalls in the path of a district court struggling with such a mandate. We did not foresee, however, nor could we possibly have foreseen, the unusual turn of events with which Judge Grady is now confronted. He has asked—I think wisely—for our help. Instead of granting it, the majority has chosen to wait until a record has been developed. I think the majority is wrong, and that the complications and uncertainties which may result will be much harder to resolve at the end than they would be to address at the outset. Having marked off damages for separate adjudication in a remarkably complex trial, we have, as I see it, an obligation to respond forthrightly when a wholly unanticipated set of circumstances appear, *about which the original mandate says virtually nothing.* The court has now said that it prefers to decide the issues presented to us at the next appeal, after a full record has been developed. I foresee, unhappily, not only another appeal, but yet a third trial and appeal, and perhaps a fourth, fifth and sixth.

The majority suggests that a third trial can be avoided by having the jury present a special verdict separating private-line damages from Execunet damages. Anyone who is familiar with the history of this case can be forgiven some reservations about the total efficacy of this proposal (although it certainly *seems* appropriate, provided that we—without taking the appeal—know enough of the implications). But the idea that *any* issue before the district court can be so clearly separated from any other is,

---

1. And it does say many things. In fact, to a degree the majority opinion is a sort of decision on a "mini-appeal," which we have granted *sub silentio.*

to put it mildly, an optimistic one.[2] For us to address the issue presented in this proposed interlocutory appeal would certainly make Judge Grady's task easier, and for that reason I think we owe it to him to hear the appeal. But such a course would also very probably make our own eventual burden easier.

The majority says that the question whether injury to Execunet is an issue of liability (and thus not triable) or of damages (and thus triable) is too close and difficult for us to decide until it has been argued at trial. I acknowledge that the issue is difficult; in fact I think it is even more difficult than would appear from the majority's statement of it. For there is some evidence in the briefs that both sides *agree* that injury to Execunet is an issue of liability not to be reargued, but from this they draw diametrically opposite conclusions. MCI, it appears, believes that injury to Execunet is unchallengeable, while AT & T seems to believe that damages to Execunet may not be introduced. It is because of these very difficulties that I am convinced that, if these matters are not clarified now, as they might be, we will be faced eventually with the even more difficult job of trying to make sense of whatever confusing verdict eventuates.

There is irony in the court's assurance to Judge Grady: "We have every confidence that as trial judge, he will be cautious in ruling on issues of this type." These are issues that we have now declined to decide until after trial as being too close and difficult, even in the serene and contemplative surroundings of the court of appeals. These are issues that arise in a context that we ourselves—in good faith but with insufficient respect for lawyerly ingenuity—have created. Now we confidently turn them over for decision, without,

in my view, adequate guidance, to a district judge embroiled in all the other forbidding complexities of this trial.

We decided the original appeal here in the context of a trial that had taken place, and we quite naturally envisioned a retrial on issues defined at the first trial. Along the course charted in our mandate an immense change in circumstances has taken place that we did not foresee, and which we did not therefore address in any way, shape or manner. That change seems to give rise to the possibility of what was a private-line case claiming (untrebled) something less than $1 billion becoming an Execunet case allegedly worth (untrebled) almost $5 billion. As a practical matter, this is an "unforeseen circumstance" of mind-boggling dimensions, rather like Columbus discovering at the last minute that the world was indeed flat and sailing off the edge.[3]

I therefore respectfully dissent from the denial of an interlocutory appeal.

---

2. For example, Judge Grady may or may not allow AT & T to argue from inconsistencies with the first damage study. He may or may not allow AT & T to argue mitigation (something that MCI has opposed in its pretrial brief). His decision in either matter may be rejected on appeal. How will it then be determined how far his decision on these matters depended on his decision to admit or exclude evidence of Execunet damage? If he turns out to have

made the wrong decision on Execunet, how will the jury award be adjusted to account for the influence of that decision on these other matters?

3. To mix my metaphors I think we should try to be in on the take-off as well as on the crash landing.